Good morning, Ms. Misner. Good morning, Your Honors. Judith Misner, representing Jeremy Barnes. This case is here on remand from the Supreme Court for consideration in light of that a fact that increases the penalty is an element of an offense to be charged, submitted to a jury, and found beyond a reasonable doubt, that mandatory minimums increase the penalty, and therefore, facts triggering mandatory minimums are elements of aggravated offenses which must be proved beyond a reasonable doubt. This Court has held post-Elaine that drug minimums increase the penalty, and therefore, facts triggering mandatory minimums are elements of an offense to be charged, submitted to a jury, and therefore, facts triggering mandatory minimums are elements of an offense to be proved beyond a reasonable doubt. And that was Heracli. Here, Mr. Barnes pled guilty to an information charging a marijuana conspiracy to distribute at least 50 kilos of marijuana and to the distribution of marijuana. Quantity was the key issue at sentencing, and the Court made findings by a preponderance of the evidence that triggered the mandatory minimum of 10 years under 841B1A. And the Court then also made guidelines calculations and imposed a sentence at the low end of the guideline range determined by the quantity finding, which was above the mandatory minimum. The government has suggested that the error may not have been preserved, but suggests that reviewing the documents beginning with the pre-sentence report and going through the sentencing hearing clearly establishes that the question of the reasonable doubt was clearly in play. The PSR noted custody options that reflected that mandatory minimum penalties depended on quantity findings and set out the potentially applicable mandatory minimums. And it also set out mandatory minimums for supervised release. The PSR objection by the defendant was that no mandatory minimum can apply because Mr. Barnes only admitted to at least 50 kilos of marijuana, which would bring him under B1C, and that other subsections cannot be triggered based on that admission under the principles in Apprendi and its progeny. However, defense counsel also acknowledged that this argument was foreclosed by this Court's decision in Goodine, where the Court held that drug quantity is a sentencing factor and not an element. At the sentencing hearing, the Court addressed the Apprendi objection and said that, I think the defendant recognizes under First Circuit law I have to deny this, so this will preserve the argument that the application of the mandatory minimum under Apprendi's progeny was inappropriate during his argument, just to make it clear that it was preserved. And the Court responded that, with regard to the Apprendi argument, the current state of the law, as you recognize, is that we're dealing with sentencing factors, not elements that have to be proved beyond a reasonable doubt. So I think it's clear that the issue of the applicability of Apprendi and mandatory minimums was preserved. The sentencing proceedings also reflect the application of the mandatory minimum. The Court announced the guideline range of 210 to 262 months was based on its findings and that it would also require the imposition of a three-year-to-life term of supervised release. Probation corrected and said supervised release is five years based on your quantity findings because of the mandatory minimums. The prosecution recommended 210 months as capturing the applicable mandatory minimum and said we were recommending a three-year term of mandatory minimum based on what it found for quantity. Defense counsel agreed that, under current law, the 10-year mandatory minimum was in play and recommended that as the lowest the defense could go, even though the plea agreement had said the defense could argue for not less than five. But because the mandatory minimum sentence imposed and the term of supervised release imposed, the 60 months, was the minimum term required by the more than 1,000-kilo finding. So the question is, is the harmless error standard that is applicable here applied to constitutional error under Harakali, under that standard, and should the case be remanded for Judge Wolf to determine what the appropriate sentence should be post-O'Lane? I've made a structural error argument. I'm not going to raise it here. I'm just preserving it. The harmless error standard is that the government must prove that the error was harmless beyond a And this error is the drug quantity finding by preponderance to trigger the mandatory minimum. It's the government's burden and it's a heavy one. This court has looked first to whether there was overwhelming evidence of drug quantity as a proxy for harmlessness and suggests that here it's not overwhelming and the government has not the testimony of a cooperator, which was essentially uncorroborated, as I have set out in both the opening brief, the reply brief, and the supplemental brief. And I'm not going to go through all of those here, particularly since the government does not suggest that the evidence was overwhelming. Could you do this instead then? Sure. Could you distinguish, I forgot the name of the case, I think it's Rivera, from just a few months ago, a case in which Judge Torreya dissented. Do you recall that? I do. In Rivera, the court, the majority found that the mandatory minimum was not in play at all. And here Which is the government's argument in this case, right, that it's not in play? Yes, the government is arguing that it was a guideline sentence and that the court didn't reference the mandatory minimum, therefore it's not in play. But I think that the, if you look at the sentencing transcript, that the court recognized that it was, that the judge pointed out in his dissent that it was in play in that case as well. At least it was mentioned several times, at least at the change of plea. Is that the difference here? It's talked about at the sentencing hearing? Well, I think it was also talked about at sentencing in Rivera. I think these are fact-bound questions. The majority in Rivera found as a fact that the mandatory minimum was not, that the court wasn't considering the mandatory minimum in any way. It's a fact question. Judge Torreya found a different set of facts. Here, I'm suggesting that the set of facts that is in play supports a finding that the mandatory minimum underlay what the court was doing, even if the court did not directly reference it in his sentence. So a pull from the fact that you are talking about 10 to 20 rather than 0 to 20. But this sentence, the guideline sentence that was imposed, it wasn't a variant sentence, right? It was at the bottom? It was at the bottom. And I think that the court was aware of the Apprendi argument, didn't say, the court didn't say that it would have imposed the same sentence if the quantity for mandatory minimum had to be proved beyond a reasonable doubt or if the mandatory minimum did not apply. It didn't exclude the impact of a mandatory minimum as other courts did in the Booker context where they said, well, regardless of that, I would have imposed the same sentence. Anyway, don't have that here. I think that the best way to determine what the court would have done, which is the government has to prove beyond a reasonable doubt, any reasonable doubt, that the court wouldn't have done something different. The best way of determining that is to send it back, as this court did in McGee. And as the court noted there, it's the easiest way to do that. And it must be remanded in any case because of the supervised release, because the mandatory term of five years was the term imposed. The court said, I'll generally go above the government's recommendation. Government recommended three. The fact that he imposed five, I think, strongly suggests that the mandatory minimum was in play for supervised release. Thank you. Thank you. Ms. Chadowitz, good morning. Good morning, Your Honors. Dina Chadowitz for the United States. I think I perhaps start where Defense Counsel left off, and that is that we have not argued, as the government argued in Ramirez-Nagron, that there was no alien error. We've conceded in this case that there was an alien error, and our position is that that error is harmless beyond the reasonable doubt, because of the particular facts in the case. And with your permission, I'll... That's what I would like to hear. Are you saying that the supervised release, as well as the sentence itself, is harmless beyond a reasonable doubt? Our position with respect to supervised release is that particular claim is forfeited. I believe that this is the first time we've ever seen any argument about supervised release here on remand from the Supreme Court. In the district court, the defendant actually used the five-year supervised release term in an effort to get the court to impose a lower discussion that the supervised release term would be an error if the Supreme Court ultimately applied Apprendi to mandatory minimums. Is that because everyone was operating under the old case law with the assumption that mandatory minimums were triggered? The problem... And this five years would have been the appropriate supervised release term? The problem, Your Honor, is that we don't know because the defendant didn't object. Under the case law and the statutes of supervised release, the maximum the court could have imposed was life. And we know from the transcript that the district court thought the defendant was a dangerous criminal. And we also know from the government, which in this case was three years, and yet it imposed a five-year sentence. So we don't know because the defendant didn't object whether the five-year sentence was simply...five-year supervised release term was simply one the court thought was the most appropriate or because it felt it was bound by the five-year mandatory minimum. So our view on the supervised release term is that's reviewed for plain error and that it does not...the error doesn't constitute plain error warranting remand. If the court were to find that error preserved, well, then we would be in the harmless error situation. And if I could address that argument, the district court, as the court knows, found the defendant was responsible for thousands of kilograms of marijuana. And in our view, it was that finding along with its determination that the defendant was a leader in a rather extensive drug trafficking organization and a recidivist that led the court to argue that the alien error is not harmless beyond a reasonable doubt because in his view, the mandatory minimum had a gravitational pull on the district court sentence. But the record doesn't support that argument at all. Rather, what had the gravitational pull was the district court's findings with respect to drug quantity, aggravated role, and the defendant's criminal history. If the mandatory minimum had the kind of gravitational pull that the defendant's suggesting, one might expect to see some discussion by the district court of the possibility of varying downward from the low end of the guideline range, which was about seven years higher than the 10-year mandatory minimum. But there was no discussion like that. To the contrary, the district court explicitly stated that it had considered imposing a sentence higher than the low end of the guideline sentencing range, save for the government's recommendation in its plea agreement that it would recommend a 210-month sentence. Maybe you could help me. The plea agreement was for 50 kilograms. Correct. Now, that was set aside basically by the court's finding of fact, which is a violation of alien. Am I correct? What the plea agreement contemplated was to remove the apprendee maximum from the calculation. So the parties agreed that... How does the court get from 50 to 1,000? So the parties agreed that the issue of whether the defendant was responsible for only 50, as the defendant contended, or over 1,000, as the government contended, would be resolved by the district court at sentencing, by our preponderance of the evidence. That's no longer a valid procedure? Correct. But this court in the United States v. Heracli, accepted that harmless error review applies to preserved alien errors. And it's our position that the error is harmless beyond a reasonable doubt. Perhaps the thing that best illustrates that the statutory mandatory minimum didn't have the kind of gravitational pull suggested by the defendant is that it was a violation of alien. As defense counsel just pointed out, counsel urged the court to impose the 10-year mandatory minimum. That is, after the district court made its factual findings and made its guideline calculations, it invited the parties to address it with respect to what would be an appropriate sentence under 3553A. But the plea agreement would have allowed him to argue for down to five years. And that got taken off the table as a result of the mandatory minimum being in place. So how do we know, beyond a reasonable doubt, that the court might not have considered a lower floor? And it might have been a matter of months taken off, but how do we know? How can we be assured of that? Because the district court could have. It was absolutely free to vary downward from the low end of 210 months down to 120. It could have gone down seven years from the government's recommendation, but it didn't. And in fact, it said it had been inclined to impose an even greater sentence. So this is a case where, except for the court checking off on a statement of reasons, that it had imposed a statutory minimum. There was really no discussion in the district court's findings of the mandatory minimum. What it was focused on in its findings was the defendant's leadership role, the large number of the huge quantity of drugs the defendant was responsible for, and the court was very concerned about the defendant's criminal history. So if the court had any interest in imposing a lesser sentence, it could have easily done that by varying downward from the GSR, and it chose not to do that. And because of that, the court could have confidence that it would have imposed the same sentence, even if the mandatory minimum wasn't in play. Do you have any sense of the universe of cases, potential cases, that might be affected by whichever way we rule here in this case? If the question is focused on a lien cases only, I can't say I know the answer to that question, but I don't think it's great. What's interesting is when you look at the case, you can see that there are a lot of cases that are not linked to a lien. When you do the researching, look for a lien within so many words of harmless, there just aren't a lot of cases. And that might be because at some point, the government engaged in a different practice with respect to mandatory minimums and started submitting them to the jury. We're not seeing the same number of cases as we did with apprendee cases. But I think the court's ruling will have a much broader impact in terms of harmless there. I mean, here is a case where there is absolutely no evidence of the position the defense has taken, that there was some gravitational pull to the 10-year mandatory minimum. And more than that, all of the evidence supports the conclusion that the court simply imposed a guideline sentence and had no interest in the statutory minimum. Given that it could have varied downward and didn't. And was expressing concern that perhaps the defendant should have an even greater sentence.